COMMONWEALTH vs. LAWRENCE BURHOE.

Middlesex.    October 15, 1975. — December 2, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Constitutional Law,* Speedy trial.

A delay of thirty-eight months between the indictment and trial of a
criminal defendant was sufficient to justify serious concern and re-
quire inquiry whether the defendant was denied his right to a
speedy trial. [592]
A motion to dismiss filed almost two years after indictments, motions
for a speedy trial and to dismiss filed thirteen months later, and a
subsequent motion to dismiss for lack of a speedy trial were suffi-
cient to preserve a defendant's right to a speedy trial. [592]
The fact that eleven months of a thirty-eight month delay between the
indictment and trial of a criminal defendant was attributable to the
Commonwealth's administrative neglect did not, without a showing
that the Commonwealth unreasonably caused a prejudicial delay,
require dismissal of the charges. [592-594]
A defendant who claimed that a thirty-eight month delay between his
indictment and trial deprived him of opportunities for parole, con-
current sentences, and rehabilitation was not entitled to a dismissal
of the charges for lack of a speedy trial where support in the record
for the claim of such prejudice was speculative and insubstantial.
[594-596]

INDICTMENTS found and returned in the Superior Court
on July 21, 1971.

Motions to dismiss the indictments were heard by *Moy-
nihan,* J., and the cases were heard by *Linscott,* J.

*Daniel F. Toomey* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney,
for the Commonwealth.

HALE, C.J.    The defendant appeals under G. L. c. 278,
§§ 33A-33G, following his conviction by a Superior Court
judge sitting without jury on separate indictments charg-
ing armed robbery, assault and battery with a dangerous
weapon, and unlawful possession of a firearm, all arising out

of a nighttime holdup of a Seven-Eleven food store in Billerica.[1] Indictments were returned on July 21, 1971, and trial was held on September 10, 1974. The defendant assigns as error the denial of his motions to dismiss for want of a speedy trial, a right guaranteed to him under both the United States and Massachusetts Constitutions.[2]

The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[3] This right has been applied to the states by virtue of the Fourteenth Amendment. *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967). The defendant became the "accused" when he was indicted, and his right to a speedy trial attached at that time. *United States* v. *Marion*, 404 U. S. 307, 313 (1971). *Commonwealth* v. *Horan*, 360 Mass. 739, 740-741 (1972).

Once the right to a speedy trial has attached, one must employ the "difficult and sensitive balancing process" mandated by *Barker* v. *Wingo* to determine whether that right has been abridged. 407 U. S. 514, 530-533 (1972). The factors to be considered are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Commonwealth* v. *Gove*, 366 Mass. 351, 361 (1974), quoting *Barker* v. *Wingo, supra,* at 530.

These factors were considered by a Superior Court judge on the defendant's motions to dismiss. Following an evidentiary hearing, the motions were denied, and the judge filed findings of fact and rulings. To the extent that the judge's

---

[1] The defendant was found not guilty on a fourth indictment charging him with unlawful possession of a sawed-off shotgun. The trial judge then imposed concurrent sentences of seven to ten years on the convictions for armed robbery and assault and battery with a dangerous weapon. The conviction for unlawful possession of a firearm was placed on file without objection by the defendant.

[2] Other errors assigned but not briefed are deemed waived.

[3] The Federal and Commonwealth speedy trial provisions will be treated as coextensive for the purposes of this opinion. See *Commonwealth* v. *Gove,* 366 Mass. 351, 356, n. 6 (1974).

findings are supported by the evidence, they will be sustained. See *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1971). Cf. *Commonwealth* v. *McGrath,* 361 Mass. 431, 437 (1972); *Commonwealth* v. *Murphy,* 362 Mass. 542, 547 (1972).

1. The length of the delay (thirty-eight months between indictment and trial) is clearly sufficient to justify serious concern and requires inquiry into the other three factors. Compare *Commonwealth* v. *Gilbert,* 366 Mass. 18, 21 (1974) (thirty-one months); *Commonwealth* v. *Underwood, ante* 522, 527-528 (1975) (twenty-six months). Contrast *Commonwealth* v. *Kennedy,* 2 Mass. App. Ct. 813 (1974) (four months).

2. The balancing test of *Barker* v. *Wingo* mandates consideration of whether the defendant has asserted his right to a speedy trial. For this purpose, we shall view the defendant's May 17, 1973, motion to dismiss as a demand for speedy trial. This motion was filed almost two years after the indictments, and immediately after its denial trial was postponed for a considerable period because of vacation plans of defense counsel. In June of 1974, the defendant, acting pro se, filed a motion for a speedy trial and another for dismissal. In July his counsel filed another motion to dismiss based on want of a speedy trial. Although the defendant may not have been constantly pressing for the disposition of his cases, his efforts demonstrate sufficient concern for the preservation of his right to a speedy trial.

3. Next we must consider the reasons for the delay. The motion judge found that there had been twenty-six or twenty-seven continuances, many unexplained and apparently unobjected to.[4] While he was unable to determine the

---

[4] Following his indictment on July 21, 1971, the defendant failed to appear for arraignment on October 28, 1971, and was defaulted, thereby necessitating a continuance. Thereafter, on November 18, 1971, the defendant was surrendered by his surety, counsel was appointed, and the defendant was held in jail. On November 22, 1971, the defendant was granted, at his request, twenty days to file special pleas. On January 17, 1972, the defendant was arraigned and pleaded not guilty to all charges. The cases were then continued to February 9, 1972, then to the March list, and finally to June 6, 1972.

reason for each one of the continuances, he was able to identify a number of factors which contributed to the delay. The delays were caused in part by the failure of the defendant to appear as scheduled for arraignment, defendant's discovery motions, defense counsel's vacation plans, and a change of defense counsel. Attempts at plea bargaining, congested calendars, and summer recesses also contributed to the delay. But most important a delay of nearly eleven months was caused by a clerical error in the District Attorney's office.[5]

---

On June 6, 1972, the defendant's motions for discovery were allowed, but the cases did not reappear on the trial list until May 8, 1973. That delay of nearly eleven months was caused at least in part by the misfiling of the defendant's papers by a clerk in the District Attorney's office. After several inquiries by the defendant's counsel and by the police, the lost papers were found, and the cases were entered on the trial list for May 8, 1973. The cases were continued to May 17, 1973, and then to September 5, 1973, because of overcrowded dockets in both the Lowell and Cambridge sittings of the Superior Court.

On September 17, 1973, the defendant's May 17, 1973, motion to dismiss for want of a speedy trial was heard and denied without prejudice. The cases were then continued to November 5, 1973, to accommodate the vacation plans of defense counsel. A series of unexplained continuances pushed the trial date to February 28, 1974. At that time the defendant's offer to plead guilty to most of the charges was rejected, and the cases were continued to March 21, 1974. Further unexplained continuances postponed the trial to June 12, 1974. The failure of the District Attorney's office promptly to provide grand jury minutes then caused an additional two week delay.

On June 20, 1974, the defendant filed a pro se motion to dismiss for want of a speedy trial, and then on June 24, 1974, petitioned the court to appoint new counsel. Counsel was appointed, and a speedy trial motion was allowed. The cases were then continued until September 9, 1974, to provide counsel time for preparation. On September 9, 1974, the defendant's June 20, 1974, and July 24, 1974, motions to dismiss for want of a speedy trial were heard and denied. The defendant was tried and convicted on the following day, September 10, 1974.

[5] On March 10, 1972, the defendant was sentenced to three to ten years at the Massachusetts Correctional Institution at Walpole on unrelated charges. A clerk in the District Attorney's office inadvertently took the papers in the present cases and placed them in the jackets of the cases concerning the defendant which had been disposed of on March 10, 1972. In categorizing this as an eleven-month delay (June, 1972 to May, 1973), we give the defendant the benefit of the doubt. In fact the cases could not have gone to trial in June, 1972, because the Commonwealth had been given time to comply with the defendant's requests for discovery.

In denying the defendant's motions to dismiss for lack of a speedy trial, the motion judge found ". . . as a fact that at no time during the long period while these cases were pending did any of the prosecuting officers intentionally delay the trial of these cases. In fact, on several occasions on which these cases appeared on the trial list the Commonwealth's witnesses were present in the courtroom and available for trial." This finding is not challenged by the defendant. Instead, the defendant asserts that the Commonwealth's negligent misfiling of the case jacket mandates dismissal.

The finding that the Commonwealth did not intentionally delay the trial does not excuse the delay. The Commonwealth must take "reasonable action to prevent undue delay in bringing a defendant to trial." *Commonwealth* v. *Horne*, 362 Mass. 738, 743 (1973), quoting *Commonwealth* v. *McGrath*, 348 Mass. 748, 752 (1965). But although the Commonwealth is ultimately responsible for delays caused by administrative neglect and overcrowded courts, these reasons should be weighed less heavily than an intentional prosecutorial attempt to frustrate the defense. See *Barker* v. *Wingo*, 407 U. S. at 531; *Commonwealth* v. *Gove*, 366 Mass. at 362.

While it is clear that some of the delay must be attributed to the Commonwealth, that in itself does not require dismissal. See *Commonwealth* v. *Steadman*, 1 Mass. App. Ct. 541 (1973). "Absent a demonstration of culpability on the part of the Commonwealth in delaying trial, 'the burden . . . [is] on the defendant to show that the government unreasonably caused a prejudicial delay.' " *Commonwealth* v. *Jackson, ante*, 511, 517 (1975), quoting *Commonwealth* v. *Gilbert*, 366 Mass. at 22.

4. The motion judge found that the defendant suffered no actual trial prejudice as the result of the numerous delays. There is no indication in the record that the delay precluded the defendant from making his best defense.[6]

---

[6] The defendant originally maintained that the delay had caused a key witness to be unavailable. However, that witness was located prior to trial.

While a showing of trial prejudice is not necessary to prove a denial of the right to speedy trial (*Moore* v. *Arizona,* 414 U. S. 25 [1973]), the absence of such prejudice is an important factor to be considered.

The defendant asserts that the delays deprived him of opportunities for parole, concurrent sentences, and rehabilitation.[7] See *Commonwealth* v. *Gove,* 366 Mass. at 364-365. Although the loss of such opportunities may in some cases be so prejudicial as to require dismissal,[8] we find that any support in the record for the claim of such prejudice is too speculative and insubstantial to warrant such action.[9] *Id.* at 365.

As we have previously indicated, the defendant has the burden of showing prejudicial delay sufficient to warrant dismissal. *Id.* at 361. We hold that this burden has not been sustained by the defendant. Although it is possible for a delay to be so long as to be inherently prejudicial (see *Commonwealth* v. *Green,* 353 Mass. 687, 690 [1968]), the thirty-eight month delay in the instant case is not. It is well settled that delay in and of itself does not require dismissal. See generally *Commonwealth* v. *Horne,* 362 Mass. 738 (1973) (forty month delay); *Commonwealth* v. *Jackson, ante,* 511 (thirty-eight month delay).[10] Since *Barker*

---

[7] The defendant also asserts in his brief that the delay caused undue or oppressive incarceration, anxiety and concern over upcoming trials and harm to general societal interests. Since there is no evidence of these claims in the record and they were not advanced at the hearing on the motion, we shall not consider them here. Nor do we consider material reproduced in the appendix to the defendant's brief which was not presented to the motion judge. See *Commonwealth* v. *Underwood, supra,* at 530-531; *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 703 (1974).

[8] See e.g., *United States* v. *Roberts,* 515 F. 2d 642 (2d Cir. 1975).

[9] The defendant was incarcerated for other crimes while awaiting trial on the present charges. He maintains that the pendency of such charges was a factor which caused him to be denied parole or access to work release programs. During that period of incarceration, however, the defendant had offered to plead guilty. Had he been permitted to do so, the resulting convictions would have been just as damaging to his parole or work release opportunities.

[10] In discussing the four factors of *Barker,* the United States Court of Appeals for the Fifth Circuit held that "... there must be some point

v. *Wingo* states that no one of the four factors is either "necessary or sufficient," 407 U. S. at 533, there may be cases of extreme delay where little or no prejudice need be shown. Conversely, a very short delay may require a very great showing of prejudice. It is for this reason that motions to dismiss for want of a speedy trial must be approached on an ad hoc basis. Once the factors have been identified, courts must assess them.

We are of the opinion that there was no error in the motion judge's denial of the defendant's motions to dismiss.

*Judgments affirmed.*

---

of coalescence of the other three factors in a movant's favor, at which prejudice — either actual or presumed — becomes totally irrelevant." *Hoskins* v. *Wainwright,* 485 F. 2d 1186, 1192 (5th Cir. 1973). Contrast *United States* v. *Roemer,* 514 F. 2d 1377, 1383 (2d Cir. 1975), refusing to presume prejudice.